Daniel WEMHOFF, et al.

v.

**CITY OF BALTIMORE.**

**Civil Action No. CCB–08–1209.**

United States District Court,
D. Maryland.

Dec. 17, 2008.

provide securities of payment for accident claims. Md.Code Ann., Transp., § 17–103(a)(3) & (b)(1), (2).

Daniel Wemhoff, Arlington, VA, pro se.

Siobhan K. Madison, Baltimore City Law Department, Baltimore, MD, for City of Baltimore.

### MEMORANDUM

CATHERINE C. BLAKE, District Judge.

Now pending before the court is a motion to dismiss for failure to state a claim or, in the alternative, for summary judgment, filed by defendant Mayor and City Council of Baltimore (the "City") against plaintiff Daniel Wemhoff. Mr. Wemhoff is suing the City for violating the Excessive Fines Clauses of the federal Constitution and the Maryland Declaration of Rights [1], the federal Constitution's Fourteenth Amendment's Due Process Clause, and Article 31, Section 3–5 of the Baltimore City Code. The issues in this case have been fully briefed and no hearing is necessary. For the reasons stated below, the City's

---

1. The Excessive Fines Clause of the U.S. Constitution states simply that "excessive fines [shall not be] imposed." U.S. Const. amend. VIII. The Excessive Fines Clause of the Maryland Declaration of Rights contains nearly identical language, stating that "excessive fines [shall not be] imposed ... by the Courts of Law." Md. Const., Decl. of Rights, art. 25.

motion to dismiss will be treated as a motion for summary judgment and will be granted.

## BACKGROUND

This dispute arises out of a parking citation that was allegedly placed on Mr. Wemhoff's vehicle on September 13, 2005, while he was parked in downtown Baltimore. The citation fined Mr. Wemhoff $23 for being parked at an elapsed parking meter, pursuant to Article 31, Section 36–11 of the Baltimore City Code[2] and Section 7–301(a) of the Judicial Proceedings Article of the Maryland Code.[3] The citation, like all Baltimore City parking citations, provides notice to the recipient that payment is due within 15 days of the violation date, that the late payment penalty is $16.00 per month, and that the recipient may request to stand trial in lieu of payment, but must do so at least five days before the payment due date. (Def.'s Mot. at Ex. 1, Copy of Wemhoff Parking Citation.) See Baltimore City Code, Art. 31, § 36–22(b)(1) (establishing "a penalty of $16 for each month or part of a month the citation remains unsatisfied"). Mr. Wemhoff claims that he never received this citation, and so did not take steps to either pay it or dispute it at the time.

On October 24, 2005, the City, having received no payment from Mr. Wemhoff, mailed additional notice of his parking citation to his last known address, in keeping with the process established by the Baltimore City Code. Baltimore City Code, Art. 31, § 36–22(a). The notice informed Mr. Wemhoff of his outstanding citation and reminded him of the late payment penalty. No payment was received, and so the late payment penalty began to accrue in No-

vember, in keeping with City law. See Baltimore City Code, Art. 31, § 36–22(b)(1) (making a person liable for the City's late payment penalty only if he has not paid within 15 days after notice was mailed to his last known address). Further notices were sent to this same address on December 15, 2005, January 10, 2006, and June 11, 2007, and each one advised Mr. Wemhoff of the late payment penalty. Mr. Wemhoff does not deny receiving any of these notices. As of the fourth notice, the City referred the matter to outside counsel for collection.

Outside counsel contacted Mr. Wemhoff via letter—sent to the same address to which all previous notices were sent—on or about October 16, 2007, requesting payment of the citation and associated late fees, which now totaled $384. On November 18, in response to this letter, Mr. Wemhoff petitioned the District Court of Maryland for Baltimore City, requesting a trial date on his unpaid citation. The District Court issued an order on November 30 in which it denied his request for a trial and ordered him to pay all fines and penalties due. This order was not appealed. Mr. Wemhoff then filed the present complaint against the city on May 9, 2008. At the time of filing, he owed a total of $519.

## ANALYSIS

Where matters outside the pleadings are considered by the court, a defendant's motion to dismiss will be treated as one for summary judgment under Rule 56. See Fed.R.Civ.P. 12(b) & (c); Johnson v. RAC Corp., 491 F.2d 510, 513 (4th Cir.1974). Rule 56(c) of the Federal Rules of Civil

**2.** This Code provision reads: "A parking meter violation during the hours that parking at the meter is permitted is punishable by a fine of $21." Baltimore City Code, Art. 31, § 36–11.

**3.** This provision reads: "In ... an uncontested parking or impounding case in which the fines are paid directly to a political subdivision or municipality, costs are $2.00." Md. Code Ann., Cts. & Jud. Proc. § 7–301(a).

Procedure provides that summary judgment:

> should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). The Supreme Court has clarified this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir.2003) (alteration in original) (quoting Fed.R.Civ.P. 56(e)). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witness' credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644–45 (4th Cir.2002), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir.1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

## A. Excessive Fines Claims

 The Excessive Fines Clause of the Eighth Amendment "limits the government's power to extract payments . . . as punishment for some offense." *United States v. Bajakajian*, 524 U.S. 321, 328, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998) (quoting *Austin v. United States*, 509 U.S. 602, 609–10, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993)). While this Amendment usually applies to criminal fines, it also reaches those civil fines designed at least in part to punish. *See Austin*, 509 U.S. at 610, 113 S.Ct. 2801; *Korangy v. U.S. F.D.A.*, 498 F.3d 272, 277 (4th Cir.2007); *Thomas v. Commissioner*, 62 F.3d 97, 99 (4th Cir. 1995). If a civil fine is subject to the Excessive Fines Clause, courts must examine the proportionality between the fine and the gravity of the associated offense in order to determine whether it is constitutionally excessive. *See Bajakajian*, 524 U.S. at 333–34, 118 S.Ct. 2028. In making this examination, courts should be mindful both that "judgments about the appropriate punishment for an offense belong in the first instance to the legislature" and that "any judicial determination regarding the gravity of a particular criminal offense will be inherently imprecise." *Id.* at 336, 118 S.Ct. 2028. As such, they should uphold a civil fine unless it is "grossly disproportional to the gravity of the defendant's offense." *Id.* at 337, 118 S.Ct. 2028; *Korangy*, 498 F.3d at 277. This standard applies as well to the evaluation of Excessive Fines Clause claims under the Maryland Declaration of Rights. *Aravanis v. Somerset County*, 339 Md. 644, 664 A.2d 888, 894 (1995); *see Serio v. Baltimore County*, 115 F.Supp.2d 509, 519 n. 17 (D.Md.2000) (applying the federal excessive fines standard to the corresponding Maryland claim).

 Mr. Wemhoff does not contend that his original parking fine violated the state

and federal Excessive Fines Clauses, but rather that the overall fine resulting from the $16 per month late payment penalty does. Since this late payment penalty is clearly meant to punish, it is subject to the Excessive Fines Clauses. Nevertheless, the court can find no basis for concluding that the penalty is grossly disproportional to the gravity of the underlying offense and is therefore unconstitutional.

First, the cost of the initial late penalty cannot be found to be excessive. The offense giving rise to the penalty is nonpayment of a civil fine of $23. A required payment of the smaller sum of $16 as punishment for failure to pay—a sum only imposed after one month of nonpayment—is certainly not a grossly disproportional fine. Indeed, had Mr. Wemhoff paid both the fine and the late fees he owed after he received his second letter from the City, the total amount paid—$55—still would have been less than many civil fines for parking violations. *See* Baltimore City Code, Art. 31, §§ 36–2—36–9.[4]

Second, the penalty's rate of accrual cannot be deemed unconstitutionally excessive. Because the $16 per month penalty is a flat fee, the rate of accrual diminishes over time. The imposition of the first month's late penalty amounts to a 70% increase in the overall fine owed, but each succeeding late penalty increases the overall fine by 41% or less. In this case, Mr. Wemhoff's overall fine increased by only 3.2% between month 30 and month 31 (the month in which he filed his complaint with this court). This rate of accrual can hardly be considered grossly disproportional to the underlying offense of nonpayment.

Mr. Wemhoff argues that the very fact the late payment penalty has the potential to continue *ad infinitem* makes it grossly disproportional; such gross disproportionality, however, is not an inevitable feature of the penalty. As will be discussed further below, Mr. Wemhoff was informed multiple times that a late payment penalty was accruing, and he took no steps either to pay the fine and associated late fees or to contact the City to make arrangements to pay. *See* Baltimore City Code, Art. 31, § 36–22(b)(2) (allowing for suspension of late payment penalties if the tardy payer agrees to a payment schedule acceptable to the City's Director of Finance). The fact that the overall fine has now grown to hundreds of dollars is more a reflection of Mr. Wemhoff's failure to timely pay or contest the original fine owed than it is a reflection of unconstitutional excess in the design of the late payment penalty.

For all of the above reasons, this court finds the late payment penalty not to be grossly disproportional to the gravity of the underlying offense, and therefore not in violation of either the federal or Maryland Excessive Fines Clauses.

## B. Due Process Clause Claim

■ Mr. Wemhoff next contends that, because he allegedly did not receive the initial notice of his parking violation, and was then denied an opportunity to appear before the District Court of Maryland for Baltimore City to contest his nonpayment for that violation, he is being deprived of property without due process of law. The Due Process Clause of the Fourteenth Amendment requires that an individual accused of an offense be given both an opportunity to be heard before a tribunal and notice of that opportunity. *Mullane v.*

---

4. Recognizing that for some reason Mr. Wemhoff may not have received the citation left on his car, and acknowledging the irritation of receiving in the mail notice of a citation he was not aware of, there is nonetheless no excuse for Mr. Wemhoff, a lawyer, simply ignoring the several notices he did receive until the fines had accumulated to the level they are now.

*Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950) ("The fundamental requisite of due process of law is the opportunity to be heard. This right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest.") (internal quotations and citation omitted); *see also Goss v. Lopez*, 419 U.S. 565, 579, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) (stating that those facing deprivation of a property interest "must be given some kind of notice and afforded some kind of hearing"); *Mora v. The City of Gaithersburg, MD*, 519 F.3d 216, 230 (4th Cir.2008).

Constitutionally adequate notice is notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314, 70 S.Ct. 652; *Elmco Properties, Inc. v. Second Nat'l Fed. Sav. Ass'n*, 94 F.3d 914, 920 (4th Cir.1996). As such, notice need not be actually received to pass constitutional muster; rather it must simply reflect reasonable efforts to inform the interested party of the impending deprivation of property. *See Plemons v. Gale*, 396 F.3d 569, 573 (4th Cir.2005). Therefore, barring evidence that a party required to give notice *knew* that such notice had not been received, its reasonable efforts will be considered constitutionally adequate. *Id.*

Here, the City provided Mr. Wemhoff with sufficient notice of his original citation and right to appear in court to contest it. His initial notice—the citation placed on his vehicle—informed him of the amount of the fine and instructed him that he had 15 days to either pay or contest the fine. *See Wilkes v. Young*, 28 F.3d 1362, 1365 (4th Cir.1994) (citing *Saukstelis v. City of Chicago*, 932 F.2d 1171, 1173 (7th Cir.1991), for the proposition that a park-

ing citation is itself a notice). The City has submitted to the court a verified copy of this citation and Mr. Wemhoff has produced no evidence, other than his bare allegations, that he did not receive it. The City also provided Mr. Wemhoff with sufficient notice of the late payment penalty. Aside from receiving notice of this penalty on the citation itself, Mr. Wemhoff also received a second notice of this penalty at his personal residence approximately 15 days before the penalty began to accrue. This notice and three subsequent notices sent to Mr. Wemhoff's residence also reminded him of his outstanding fine for the original violation. Given these facts, there can be no dispute that Mr. Wemhoff received constitutionally adequate notice.

Mr. Wemhoff's opportunity to be heard also was constitutionally adequate. Courts determine the adequacy of the process the government provides for a hearing by weighing the balance of three factors: (1) "the private interest that will be affected by the official action"; (2) the risk of erroneous deprivation of that interest through the procedure currently provided, and the "probable value, if any, of additional or substitute procedural safeguards"; and (3) the government's interest in pursuing this official action, "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *see Rodgers v. Norfolk Sch. Bd.*, 755 F.2d 59, 62–63 (4th Cir.1985) (weighing these factors).

Here, the private interest affected by the enforcement of the original fine and ensuing late fees is Mr. Wemhoff's property interest in his money, which is not insignificant. The City's interests here are twofold: incentivizing adherence to its traffic laws through enforcement of the

fine, and encouraging punctual payment of the fine through enforcement of the late payment penalty. These interests—at their core, interests in ensuring full compliance with the law—are fundamental to the effective function of the City, and generally are not outweighed by individual property interests. *See, e.g., Plumer v. State of Md.,* 915 F.2d 927, 932 (4th Cir. 1990) (finding that deprivation of a citizen's property interest in his driver's license did not require more than notice and a hearing).

The risk of erroneous deprivation of property from the procedures currently in place for these fines is slight. First, the law provides for the opportunity for a pre-deprivation hearing, of which Mr. Wemhoff was notified by the original citation. *See* Md.Code Ann., Transp. § 26–303(a)(2). Mr. Wemhoff failed to take advantage of this aspect of the process provided for him. Second, after imposition of the fine, the law still allows for individuals to petition the court for a hearing, as Mr. Wemhoff did in this case. It also allows for payments of late penalties to be adjusted through arrangements made with the Baltimore City Director of Finance. *See* Baltimore City Code, Art. 31, § 36–22(b)(2) (allowing for payment arrangements). Mr. Wemhoff was able to avail himself of the court, and when his request for a trial was denied, he did not exercise his further right to appeal the court's determination. Md. R. Civ. P. 7–104(a).

Given the weight of the City's interest in law enforcement, the comparably less substantial weight of Mr. Wemhoff's particular property interest, and the negligible risk of error, this court finds that, on balance, process was constitutionally adequate in this case.[5]

### C. *Article 31, § 3–5 Claim*

Finally, Mr. Wemhoff argues that the overall fines he now faces run afoul of Article 31, Section 3–5 of the Baltimore City Code. This Code section reads: "Any person violating any of the provisions of this subtitle shall be guilty of a misdemeanor and, upon conviction thereof in any court of competent jurisdiction, shall be fined for each and every offense not more than $100." The pertinent language in this section is "this subtitle." Because Section 3 is formally designated "Subtitle 3," this $100 limitation applies only to items listed elsewhere in Section 3, namely defacing or imitating traffic devices (§ 3–1), not complying with traffic devices (§ 3–2), and violating rules promulgated by the Director of Public Works (§ 3–3). Accordingly, this limitation does not apply to penalties arising from Mr. Wemhoff's parking violation.

### CONCLUSION

For the foregoing reasons, the City's motion for summary judgment will be granted. A separate Order follows.

### ORDER

For the reasons stated in the accompanying Memorandum, it is hereby **ORDERED** that:

1. The defendant's motion to dismiss or for summary judgment (docket entry no. 7) is **GRANTED;**

2. The plaintiff's motions to assign the case to the Southern District [sic] of Maryland (docket entry no. 4) and to amend the complaint to include a new plaintiff (docket entry no. 14) are **DENIED** as moot;

---

5. The very fact that Mr. Wemhoff is now able to have his claims reviewed by another court before having paid any portion of his fine or late fees further suggests that he has been afforded adequate due process protection.

3. Judgment is entered in favor of the defendant; and

4. The Clerk shall **CLOSE** this case.