**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 24-1534**

───────────────

ANN BARCLAY DEWET; LAURENCE E.T. SMITH, in their capacities as personal representatives of the Estate of Ann Tierney Smith,

Plaintiffs - Appellants,

v.

G. RUSSELL ROLLYSON, JR., in his individual capacity,

Defendant - Appellee,

and

MARK HUNT, in his official capacity,

Defendant.

───────────────

Appeal from the United States District Court for the Southern District of West Virginia, at Bluefield.  Frank W. Volk, Chief District Judge.  (1:21-cv-00328)

───────────────

Argued:  May 6, 2025                          Decided:  October 2, 2025

───────────────

Before DIAZ, Chief Judge, NIEMEYER, Circuit Judge, and Matthew J. MADDOX, United States District Judge for the District of Maryland, sitting by designation.

───────────────

Affirmed by published opinion.  Chief Judge Diaz wrote the opinion, in which Judge Niemeyer and Judge Maddox joined.

───────────────

**ARGUED:** Joseph M. Ward, FROST BROWN TODD, Charleston, West Virginia, for Appellants. David Paul Cook, Jr., MACCORKLE LAVENDER, PLLC, Charleston, West Virginia, for Appellee. **ON BRIEF:** Carte P. Goodwin, Blake N. Humphrey, FROST BROWN TODD LLP, Charleston, West Virginia, for Appellants. Carrie A. Dysart, MACCORKLE LAVENDER, PLLC, Charleston, West Virginia, for Appellee.

———————

DIAZ, Chief Judge:

Ann Tierney Smith failed to pay taxes assessed on real property she owned in West Virginia. As a result, G. Russell Rollyson, Jr.—an employee of the West Virginia State Auditor's Office—issued a tax deed to Ed Boer, who had bought a tax lien on the property at a county sheriff's sale.

Smith—and following her death, the representatives of her estate—sued Rollyson and Boer under 42 U.S.C. § 1983 for deprivation of her property without due process. The district court granted summary judgment to Rollyson and denied it to the estate representatives after finding him entitled to qualified immunity.

The estate representatives appeal. We affirm.

I.

No party disputes the following facts.

Smith owned real property in West Virginia. She failed to pay the real estate taxes assessed for 2016, and the Mercer County Sheriff sold a tax lien on the property to Boer.

Boer then sought a tax deed to the property. He prepared a list of those to be served with notice of the lien sale, the amount needed to redeem the real estate, and the date by which to redeem (collectively, the notice to redeem). *See* W. Va. Code Ann. § 11A-3-19(a) (LexisNexis 2017 & Supp. 2018) (repealed 2022) (listing requirements for lien purchaser to secure deed); *id.* § 11A-3-21(a) (LexisNexis 2017) (repealed 2022) (form of notice to redeem).

3

Boer gave that list to the West Virginia State Auditor's Office so it could serve the listed people with the notice to redeem. *See* W. Va. Code Ann. § 11A-3-22(a) (LexisNexis 2017) (repealed 2022).[1] Boer's list identified Smith as one of the people to be notified by certified and first-class mail at four addresses. But Boer didn't provide Smith's then-current mailing address for the property, even though it was listed in two county databases, one of which was publicly available. The certified mailings and two of the first-class mailings the State Auditor's Office sent to Smith were returned marked as "Unclaimed," "Unable to Forward," and/or "Not Deliverable as Addressed."

Rollyson then opted to have Smith personally served, and he directed Boer to pay for such service. But he didn't require Boer to search county records for Smith's mailing address. The process servers were unable to effect service; they instead posted notices at the property and at two other addresses listed for Smith.

After the deadline to redeem the property had expired, Rollyson issued Boer a tax deed on April 1, 2019. Smith learned about the tax deed in late 2020.

Smith sued Rollyson and Boer, raising claims under 42 U.S.C. § 1983 and West Virginia law. Following Smith's death, estate representatives Ann Barclay deWet and Laurence E.T. Smith (together, deWet) were substituted as plaintiffs.

---

[1] Under West Virginia law, the State is the initial seller of a tax lien; it thereafter provides the lien purchaser with the mechanism for affording notice of the owner's right to redeem the property after the lien sale. *Plemons v. Gale*, 396 F.3d 569, 572 n.3 (4th Cir. 2005) (explaining that tax-sale procedure employed here—where private party must use state procedures with "overt, significant assistance of state officials"—constitutes "state action" (internal quotation marks omitted)).

Rollyson and deWet each moved for summary judgment.[2] The district court granted Rollyson summary judgment and denied deWet's motion as moot.

The court faulted Rollyson for issuing the tax deed without directing Boer to search county records anew for Smith's address after the mailed notices to redeem were returned. But the court concluded that qualified immunity insulated Rollyson because the duty of "a deputy commissioner [like Rollyson], as a final step in the redemption notice process, [to] require one seeking a tax deed to make a final search of the county tax records for new address information of the previously unreachable owner" wasn't clearly established on April 1, 2019. *deWet v. Rollyson*, 733 F. Supp. 3d 519, 533-34 (S.D.W. Va. 2024).[3]

This appeal followed.

## II.

We review de novo district court decisions on motions for summary judgment and qualified immunity. *Caraway v. City of Pineville*, 111 F.4th 369, 378 (4th Cir. 2024). "Summary judgment is appropriate only 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"

---

[2] Before her death, Smith reclaimed ownership of the property in a settlement with Boer and voluntarily dismissed with prejudice her state and § 1983 claims against him, *see* FED. R. CIV. P. 41(a)(1)(A)(i).

[3] The district court also granted summary judgment to Rollyson on the portion of the claim brought against him in his official capacity. *deWet*, 733 F. Supp. 3d at 529. And it determined that Rollyson was entitled to qualified immunity in his individual capacity for issuing the tax deed to Boer without sending a copy of the notice to redeem addressed to "Occupant" at the property and without publishing the notice to redeem. *Id.* at 531-32, 534. However, deWet doesn't appeal these rulings.

*Aleman v. City of Charlotte*, 80 F.4th 264, 283 (4th Cir. 2023) (quoting FED. R. CIV. P. 56(a)).

"Ordinarily, when a district court's grant of summary judgment disposes of cross-motions for summary judgment, we consider each motion separately on its own merits, resolving all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion." *Wingate v. Fulford*, 987 F.3d 299, 304 (4th Cir. 2021) (internal quotation marks omitted). But here the parties don't present competing versions of the facts, so we review the district court's rulings on the motions "in tandem." *Id.*

"Section 1983 creates a cause of action against any person who, acting under color of state law, abridges a right arising under the Constitution or laws of the United States." *Aleman*, 80 F.4th at 284 (internal quotation marks omitted). "Nevertheless, a government official sued under § 1983 is entitled to invoke qualified immunity, which is more than a mere defense to liability; it is immunity from suit itself." *Caraway*, 111 F.4th at 381 (internal citation omitted). Qualified immunity "shields public officials from civil liability [under § 1983] unless they violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Lewis v. Caraballo*, 98 F.4th 521, 530 (4th Cir. 2024) (internal quotation marks omitted).

"A right is clearly established if, at the time of the alleged offense, the contours of the right allegedly violated were sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 534 (citation modified).

6

Applying an "objective standard," we "analyze this prong from the perspective of a reasonable offic[ial]." *Id.*

In assessing whether a right is clearly established, we "must first define the right at the appropriate level of specificity." *Est. of Jones by Jones v. City of Martinsburg*, 961 F.3d 661, 667 (4th Cir. 2020) (internal quotation marks omitted). We then "examine cases of controlling authority in this jurisdiction—that is, decisions of the Supreme Court, this court of appeals, and the highest court of the state in which the case arose," *Franklin v. City of Charlotte*, 64 F.4th 519, 534 (4th Cir. 2023) (citation modified), to determine whether a reasonable official would be on notice that his actions violate the law, *see Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 538 (4th Cir. 2017).

We also "may look to a consensus of cases of persuasive authority from other jurisdictions, if such [a consensus] exists." *Id.* at 539 (citation modified). But, if there isn't any controlling authority, or any such consensus, the right isn't clearly established. *See id.*

The cases needn't be identical. "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). But even so, the law must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citation modified).

We don't impose on officials "a duty . . . to resolve subtle or open issues. [They also] are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *McVey v. Stacy*, 157 F.3d 271, 277 (4th Cir. 1998) (internal quotation marks omitted).

III.

We're persuaded that Rollyson is entitled to qualified immunity. It wasn't clearly established on April 1, 2019, that Rollyson needed to have Boer search or check county records anew for the property owner's address after learning that mailed notices to redeem her property were returned as undeliverable or unclaimed.[4]

"Before a State may take property and sell it for unpaid taxes, the Due Process Clause of the Fourteenth Amendment requires the government to provide the owner 'notice and opportunity for hearing appropriate to the nature of the case.'" *Jones v. Flowers*, 547 U.S. 220, 223 (2006) (quoting *Mullane v. Cent. Hanover Bank & Tr.*, 339 U.S. 306, 313 (1950)). And that right was clearly established when Rollyson issued the tax deed. The question before us is what Rollyson was required to do on the record facts.

It was clearly established, deWet argues, that Rollyson had to demand that Boer search or check the local records anew for Smith's mailing address for the property before

---

[4] At oral argument, deWet maintained that the clearly established right Rollyson violated after the mailed notices to redeem were returned was the right "to cause the local records to be checked again." Oral Arg. at 10:17-45. But in her briefs, deWet argued that Rollyson was constitutionally required to demand that Boer search or check local records anew for Smith's address following the return of the mailed notices to redeem. Opening Br. at 17-19, 24, 32; Reply Br. at 1-2, 4, 8-9.

It's not clear to us the distinction (if any) between these two formulations of the right. But it doesn't matter, because deWet has forfeited any argument that the right at issue is grounded in the notion that Rollyson had to cause the local records to be checked again. She didn't proffer this formulation in her opening brief, and her fleeting references to it raised for the first time in her reply brief, Reply Br. at 3, 8, are insufficient. *See United States v. Smith*, 75 F.4th 459, 468 (4th Cir. 2023) ("[A] party forfeits an argument by failing to develop it in the opening brief, even if its brief takes a passing shot at the issue." (internal quotation marks omitted)).

8

issuing the tax deed.[5]  She cites four cases for that proposition.  But none support it, let alone establish it clearly.

Start with *Plemons v. Gale*, where another West Virginia property owner sued because she didn't receive timely notice of the sale of a tax lien on her property.  396 F.3d at 570-72.  There, after notices to redeem addressed to the property owner and to "Occupant" at the property sent by certified mail were returned as undeliverable, the lien purchaser published notice of redemption rights in local newspapers and posted notice on the front door of the local courthouse.  *Id.* at 571.  No one responded to the publications or posting, and the county clerk issued a tax deed to the lien purchaser.  *Id.*

The district court concluded that the reasonable diligence standard mandated by *Mullane* and its progeny[6] required the lien purchaser "to make further inquiry reasonably calculated to locate the interested party's correct address" when notice sent by certified mail is returned unclaimed.  *Id.* at 572 (internal quotation marks omitted).  Because the lien purchaser reasonably could have (1) contacted the property owner at the number listed in

---

[5] Additionally, deWet briefly asserts (as part of her clearly established argument) that Rollyson's decision to effect personal service failed to address the "undeliverability" of the notices to redeem.  Opening Br. at 29; Reply Br. at 8 n.4.  But this argument goes to whether Rollyson's follow-up efforts were reasonable, rather than whether deWet's proffered right was clearly established.

[6] Those cases "teach that a party charged with giving notice must be reasonably diligent in doing so."  *Plemons*, 396 F.3d at 574.  In the case of a tax sale of real property, such diligence "requires that reasonable efforts be made to identify and locate parties with an interest in the property.  Once those parties are located, they must be given notice of the impending sale using a method reasonably calculated, under all of the circumstances, to actually inform them of the sale."  *Id.*

the local telephone directory, (2) asked the property tenants for help in reaching her, or (3) made inquiries of the mortgagee bank, the district court determined that the property owner hadn't received constitutionally adequate notice of her right to redeem her property. *Id.*

We held that, "when prompt return of an initial mailing makes clear that the original effort at notice has failed, the party charged with notice must make reasonable efforts to learn the correct address before constructive notice will be deemed sufficient." *Id.* at 576. And while that requirement didn't compel the lien purchaser to consult the phone directory or make inquiries of tenants or the mortgagee bank, it did require the purchaser to search all publicly available county records for the property owner's address. *Id.* at 577-78. Because it wasn't clear whether the lien purchaser made any effort to search public documents or if such a search would have succeeded, we remanded to the district court to answer those questions. *Id.* at 578.

Importantly though, *Plemons* directed its admonition at the tax lien purchaser, *id.*, and we didn't set forth there a per se rule prescribing the follow-up measures to be employed, *see id.* at 577 ("*Mullane* instructs that all the circumstances of a case, including its practicalities and peculiarities, must be considered in determining the constitutional sufficiency of notice. [T]he Constitution only requires reasonable efforts, given all of the circumstances of a particular case." (citation modified)). So *Plemons* wouldn't have placed Rollyson on notice that he was obligated to demand that a lien purchaser search or check local records anew for a property owner's address after notices to redeem were returned as undeliverable or unclaimed.

10

Indeed, the United States Supreme Court confirmed nearly a year after *Plemons* that what suffices as notice isn't a one-size-fits-all proposition. In *Jones v. Flowers*, which deWet also cites, certified mailings related to a tax delinquency on a property were returned to the commissioner of state lands as unclaimed. 547 U.S. at 223-24. A third party purchased the house. *Id.* at 224. The owner sued, claiming the notice was deficient, but the Arkansas Supreme Court disagreed. *Id.* at 224-25.

The Supreme Court granted certiorari and reversed, holding that, "when mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so." *Id.* at 225.

Due process, the Court emphasized, doesn't require that a property owner receive actual notice before the government may take his property. *Id.* at 226. But it does "require[] the government to provide 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* (quoting *Mullane*, 339 U.S. at 314).

The Court declined to prescribe a formula for providing notice. *See id.* at 234, 238. But it suggested that "reasonable followup measures" when a certified mailing is returned unclaimed would be sending notice by "regular mail," "post[ing] notice on the front door, or [addressing] otherwise undeliverable mail to 'occupant.'" *Id.* at 234-35. The government, the Court concluded, however, wouldn't need to conduct an "open-ended search" for an owner's new address. *Id.* at 236.

11

Like *Plemons*, *Jones* doesn't prescribe the measures required to satisfy due process. *See id.* at 234, 238. And given the Supreme Court's recognition that posting notice is one of several reasonable options, *id.* at 234-35, Rollyson wouldn't have known that the option he chose here—personal service followed by posting of the notices to redeem—violated established law.

Lastly, deWet relies on *O'Neal v. Rollyson*, 729 F. App'x 254 (4th Cir. 2018), and the district court's opinion we affirmed, *O'Neal v. Wisen*, No. 5:16-cv-08597, 2017 WL 3274437 (S.D.W. Va. Aug. 1, 2017). There, property owners sued Rollyson and the lien purchaser for deprivation of property without due process. The district court denied Rollyson qualified immunity because (1) he issued the purchaser a tax deed to the property knowing that mailed redemption notices had been returned as undeliverable and/or unclaimed and (2) he made no other efforts to provide notice until after the lien purchaser received the deed. *O'Neal*, 2017 WL 3274437, at *2-3, 5-7.

We affirmed, holding that Rollyson was obligated to attempt reasonably available measures to provide notice before issuing the tax deed, because that obligation was established "at the latest" in 2006 by the Supreme Court's opinion in *Jones*. *O'Neal*, 729 F. App'x at 256-57. But the *O'Neal* decisions don't help deWet.

For starters, "unpublished opinions [of this court] 'cannot be considered in deciding whether particular conduct violated clearly established law for purposes of adjudging entitlement to qualified immunity.'" *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 706 n.18 (4th Cir. 2018) (quoting *Hogan v. Carter*, 85 F.3d 1113, 1118 (4th Cir. 1996) (en banc)).

12

And even in the absence of that rule, *O'Neal* doesn't move the needle.  In that case, despite knowing that the notices to redeem had been returned, Rollyson made no other attempt to provide notice to the property owners.

The same can't be said here.

\*　　\*　　\*

The district court correctly found that Rollyson wasn't on notice that he needed to have Boer search county records anew for Smith's mailing address, in lieu of the methods Rollyson used to provide notice to Smith of her right to redeem the property.  Accordingly, the district court's judgment is

*AFFIRMED*.

13