**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 07-1941**

CHRISTOPHER A. HANEY, on behalf of himself, individually, and as a class representative of all holders of North Carolina automobile insurance policies issued by USAA Casualty Insurance Company, United Services Automobile Association, USAA General Indemnity Company, USAA County Mutual Insurance Company, and USAA, and in effect at any time from and after December 1, 2002,

    Plaintiff - Appellant,

   v.

USAA CASUALTY INSURANCE COMPANY, a Texas Insurance Company; UNITED SERVICES AUTOMOBILE ASSOCIATION, a Texas Reciprocal Interinsurance Exchange; USAA GENERAL INDEMNITY COMPANY, a Texas Insurance Company,

    Defendants – Appellees,

   and

USAA COUNTY MUTUAL INSURANCE COMPANY, a Texas Insurance Company; USAA, a Texas Association of Insurance and Financial Companies,

    Defendants.

Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington.  James C. Fox, Senior District Judge.  (5:06-cv-00006-F)

Argued: January 27, 2009    Decided: May 15, 2009

Before MICHAEL, GREGORY, and AGEE, Circuit Judges.

---

Affirmed by unpublished opinion. Judge Agee wrote the majority opinion, in which Judge Michael joined. Judge Gregory wrote a separate opinion concurring in part and dissenting in part.

---

**ARGUED:** John Crudup Rogers, III, ALLEN, MOORE & ROGERS, L.L.P., Raleigh, North Carolina, for Appellant. David A. Jones, AKIN, GUMP, STRAUSS, HAUER & FELD, San Antonio, Texas, for Appellees. **ON BRIEF:** Josiah Stockton Murray, III, HEDRICK, MURRAY, BRYSON, KENNETT, MAUCH & ROGERS, P.L.L.C., Durham, North Carolina, for Appellant. Reid L. Phillips, BROOKS, PIERCE, MCLENDON, HUMPHREY & LEONARD, L.L.P., Greensboro, North Carolina; Nada L. Ismail, AKIN, GUMP, STRAUSS, HAUER & FELD, San Antonio, Texas, for Appellees.

---

AGEE, Circuit Judge:

I.

Christopher A. Haney, individually and as a proposed class representative, filed suit in North Carolina state court against USAA Casualty Insurance Company ("USAA Casualty"), USAA General Indemnity Company ("USAA General"), and United Services Automobile Association ("USAA") (collectively, "the Defendants").[1] USAA is the parent company of USAA Casualty and USAA General. All three market and sell auto insurance policies to members of the armed services and their families and use the same "form" policies. At all times relevant to this suit, Haney was the named insured on an automobile insurance policy issued by USAA Casualty and only that company's name appeared on the declarations page of his policy.[2]

Haney asserted a breach of contract claim, among others, against the Defendants. He argued that although the Defendants routinely pay auto dividends to their policyholders in other states, they refused to make dividend payments to policyholders

---

[1] Haney also sued, as separate party defendants, USAA County Mutual Insurance Company and USAA, a trade name. Both parties were subsequently dismissed from this action.

[2] Reference to Haney's "policy" includes renewals of that policy that occurred during the relevant timeframe. The record does not reveal any variation among the terms or conditions of the renewed policies that would affect the issues on appeal.

in North Carolina, including Haney, beginning in 2002. According to Haney, the Defendants blamed this disparate treatment on North Carolina's "unique procedures for setting automobile insurance rates".[3]

The Defendants timely removed the case to the United States District Court for the Eastern District of North Carolina. USAA Casualty filed an answer while the remaining defendants filed motions to dismiss under Rule 12(b)(1). USAA and USAA General asserted that, as an insured under a policy issued only by USAA Casualty, Haney lacked standing to pursue his claims against them.

Haney filed a motion for class certification and the appointment of class counsel. The Defendants filed motions for

---

[3] The record reflects that USAA and its subsidiaries consider the regulatory process for the approval of insurance rates in North Carolina uniquely burdensome among the states. We only note that the record reflects North Carolina's regulatory scheme allows insurers, like USAA, to charge higher proposed rates before a proposed rate increase has been approved by the North Carolina Insurance Commissioner so long as any increased revenue above an existing approved rate is set aside in an escrow account until such time as the Insurance Commissioner approves or disallows the proposed increase. Should the Insurance Commissioner not approve some part of the proposed increase, all monies in escrow, plus interest, reflecting the disallowed part of the increase, must be refunded to policyholders. This would be so even if USAA had already issued dividends to the policyholders based on the collected premiums. This system routinely leads to protracted disputes (and often litigation) between insurers such as USAA and the Insurance Commissioner.

summary judgment and successfully sought to stay briefing on Haney's motions regarding class certification pending resolution of the dispositive motions.

On August 17, 2007, the district court issued an extensive order simultaneously disposing of the motions to dismiss and motions for summary judgment. The district court first determined that Haney lacked standing to sue USAA General because, as an insured of USAA Casualty, he could not establish "any action by USAA [General] that has caused him injury." Haney v. USAA Casualty Ins. Co., et al., No. 5:06-CV-6-F, slip op. at 16 (E.D.N.C. Aug. 17, 2007). Even though Haney could also not show he was an insured of USAA, the district court found that he had pled sufficient allegations to establish individual standing to pursue a claim against USAA because he alleged that the USAA Board of Directors made the actual decision regarding the payment (or nonpayment) of dividends for USAA Casualty policyholders. Accordingly, the district court granted USAA General's motion to dismiss, but denied the motion as to USAA. The district court addressed, and granted, the summary judgment motions by USAA and USAA Casualty.

On appeal, Haney contends the district court erroneously concluded there were no issues of material fact with respect to the Defendants' duty to pay auto dividends and thus erred in granting summary judgment on his claims for breach of contract,

5

violation of North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75.1.1 *et seq*. ("UDTPA"), and declaratory judgment.[4] He also contends the district court erred in finding that he lacked standing to sue USAA General. For the reasons that follow, we affirm the judgment of the district court.

## II.

Haney contends the district court erred in holding that he lacked standing to sue USAA General. To have standing vis-à-vis USAA General, Haney "must have suffered an 'injury in fact'-an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not 'conjectural' or 'hypothetical'" Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (quoting Whitmore v. Arkansas, 495 U.S. 149, 155 (1990)) (internal citations omitted). Not only must Haney demonstrate injury, he must also show that the injury sustained is "fairly . . . traced to the challenged action of [USAA General], and not injury that results from the independent action of some third party not before the

---

[4] Haney also asserted a claim for breach of fiduciary duty against USAA and USAA-Casualty. Although the district court also granted summary judgment on this claim, Haney has not sought review of this decision on appeal and we do not consider it.

court." <u>Simon v. E. Ky. Welfare Rights Org.</u>, 426 U.S. 26, 41–42 (1976); <u>see</u> <u>also</u> <u>Friends for Ferrell Parkway v. Stasko</u>, 282 F.3d 315, 320 (4th Cir. 2002) ("The traceability requirement ensures that it is likely the plaintiff's injury was caused by the challenged conduct of the defendant, and not by the independent actions of third parties not before the court.").

Haney predicates his standing argument on the contention that purchasing an auto policy from USAA Casualty makes him a member of USAA and it is that company's board of directors that decides whether to pay a dividend to USAA Casualty and USAA General policyholders. Even if this is so, Haney fails to show any causal relation to a decision by USAA's board of directors to withhold the payment of dividends to USAA General policyholders that causes damage to him as a USAA Casualty policyholder. Haney thus concedes that any damages he incurs from loss of the dividend is traceable to USAA and has no nexus to USAA General. In short, Haney has not shown a "case or controversy" exists between himself and USAA General sufficient

to confer Article III standing.[5]  Without Article III standing as a beginning point, Haney cannot claim standing for Rule 23 purposes.  See Fallick, 162 F.3d at 423.  Thus, the district court did not err in granting USAA General's motion to dismiss.[6]

---

[5] Haney's reliance on Fallick v. Nationwide Mut. Ins. Co., 162 F.3d 410 (6th Cir. 1998) is misplaced.  That court affirmed the principle that "[a] potential class representative must demonstrate individual standing vis-a-vis the defendant; he cannot acquire such standing merely by virtue of bringing a class action."  Id. at 423 (emphasis added).  It is only after "'an individual has alleged a distinct and palpable injury to himself [that] he has standing to challenge a practice even if the injury is of a sort shared by a large class of possible litigants.'"  Id. (quoting Senter v. General Motors Corp., 532 F.2d 511, 517 (6th Cir. 1976)).  Haney confuses standing to challenge USAA's practice of not paying dividends to North Carolina policyholders with standing to sue a particular corporate defendant, USAA General, with whom he has no legal relationship.  Moreover, as at least one court has noted, "circuit precedent interpreting ERISA, a statute that is not at issue in the present case, was an important factor in the [Fallick] court's decision regarding Article III standing."  In re Eaton Vance Corp. Sec. Litig., 220 F.R.D. 162, 168 (D. Mass. 2004).

[6] As a practical matter, even if Haney had standing as to USAA General, his claims would fail for the same reasons they fail against the other defendants.  We also note our agreement with the district court's determination that Haney possessed standing to sue USAA.  Haney's allegation that USAA's board of directors made the decision not to issue refunds for USAA Casualty policyholders made his alleged injury "fairly traceable" to USAA's conduct.  See Lujan, 504 U.S. at 561 ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'").

8

III.

We review the grant of summary judgment <u>de</u> <u>novo</u>. <u>Long v. Dunlop Sports Group Ams., Inc.</u>, 506 F.3d 299, 301 (4th Cir. 2007)). A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322–23 (1986). "[T]he burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." <u>Id.</u> at 325. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986) (internal citations omitted).

A.    Breach of Contract

Under North Carolina law, "an insurance policy is a contract and its provisions govern the rights and duties of the parties thereto."  Fidelity Bankers Life Ins. Co. v. Dortch, 348 S.E.2d 794, 796 (N.C. 1986).  Therefore, we have a "duty to construe and enforce insurance policies as written, without rewriting the contract or disregarding the express language used."  Id.

The first page of Haney's policy contains, opposite the table of contents entitled "Your Personal Auto Policy Quick Reference", the following text:

RECIPROCAL PROVISIONS . . .
apply when United Services Automobile Association, or USAA, is named on the Declarations as the Company.

A non-assessable policy
      Reciprocals
      Special definitions and provisions
      Plan of operation

        In your policy these sets of words have the same meaning: Policy means Contract; You, Your or Insured means Subscriber; We, us, our, USAA or Company means Reciprocal or Interinsurance Exchange; Premium means Deposit; Chairman means Attorney-in-Fact.
        Your policy is issued as part of an Interinsurance Exchange by the Chairman of USAA as Attorney-in-Fact under the authority given him by the subscribers.
        No Contingent Liability: You are liable only for the amount of your premium since USAA has a free surplus in excess of the amount required by Article 19.03 of the Texas Insurance Code of 1951, as amended.
        Participation: By purchasing this policy, you are a member of USAA and subject to its bylaws.  You are entitled to dividends as they may be declared by us,

10

after approval as required by the Texas Insurance Code
of 1951, as amended.

J.A. 89 (emphasis added). Haney asserts on appeal, as he argued to the district court, that the above "participation" provision entitles him to dividends as part of his contract with USAA Casualty and the failure to pay those dividends constitutes a breach of contract. However, Haney does not dispute that USAA Casualty, and not USAA, appears on the declarations page of his policy.

Under North Carolina law, when "the terms of the policy are plain, unambiguous, and susceptible of only one reasonable interpretation, a court will enforce the contract according to its terms." ABT Bldg. Prods. Corp. v. Nat'l Union Fire Ins. Co. Of Pittsburgh, 472 F.3d 99, 115-16 (4th Cir. 2006) (citing Register v. White, 599 S.E.2d 549, 553 (N.C. 2004)). As the district court correctly concluded, "[a] plain reading of the policy shows that all of the 'reciprocal provisions,' that is, the provisions that are only applicable to United Services Automobile Association, the reciprocal insurance exchange, are

11

grouped together."[7] <u>Haney</u>, No. 5:06-CV-6-F, slip op. at 20. Thus, according to the plain language of the "reciprocal provisions", there is no contractual obligation on the part of USAA Casualty to pay Haney dividends.

To avoid this result Haney makes several arguments on appeal: that the language regarding dividends is ambiguous and thus should be construed against the Defendants, that their historical custom and practice of paying dividends creates an entitlement to the payment of dividends, and that the nonpayment of dividends violates N.C. Gen. Stat. § 58-8-25. For the reasons that follow, we reject each argument.

The "reciprocal provisions" are "plain, unambiguous, and susceptible of only one reasonable interpretation." <u>ABT Bldg. Prods.</u>, 472 F.3d at 115–16. The very first sentence clearly establishes that the provisions, including that about dividend payment, only "apply when United Services Automobile Association, or USAA, is named on the Declarations as the Company." As noted above, USAA is not so named and no contract

---

[7] The "reciprocal provisions" are necessary because while all three defendants, USAA, USAA Casualty, and USAA General use the same "form" policies for their North Carolina policyholders, USAA is a reciprocal insurance exchange. <u>See</u> N.C. Gen. Stat. Ann. § 58-15-5(5) (West 2008) ("Reciprocal insurance" means insurance resulting from the mutual exchange of insurance contracts among persons in an unincorporated association under a common name through an attorney-in-fact having authority to obligate each person both as insured and insurer.").

provision for dividends exists as to USAA Casualty. Thus, it would be a manufactured and false reading to consider the "participation" provision about dividends as somehow separately applicable to USAA Casualty policyholders such as Haney. In short, there is nothing ambiguous about the reciprocal provisions.

With no ambiguity, evidence of historical practice or custom is not admissible to create a contractual obligation on the part of the Defendants.

> [E]vidence of a usage or custom is never admitted to make a new contract or to add a new element to one previously made. It may explain what is ambiguous but it cannot vary or contradict what is manifest and plain, or be received to give to plain and unambiguous words or phrases a meaning different from their natural import.

Lester Bros. v. J. M. Thompson Co., 134 S.E.2d 372, 378 (N.C. 1964) (citing 55 Am. Jur., Usages and Customs § 31; 25 C.J.S. Customs and Usages § 30); see also E.L. Scott Roofing Co. v. North Carolina, 346 S.E.2d 515, 520 (N.C. Ct. App. 1986). Having determined that the "reciprocal provisions," including the obligation to pay dividends, are not ambiguous and do not apply to USAA Casualty policyholders such as Haney, evidence of custom or usage is simply not admissible to alter the terms of the parties' contract.

Finally, Haney avers that regardless of the contractual provisions in his policy, when USAA Casualty is authorized to

13

pay dividends to its policyholders in other states, the failure to pay dividends to its North Carolina policyholders violates N.C. Gen. Stat. § 58-8-25. Haney argues that the statute "is part of Haney's policy '. . .to the same extent as if therein written . . .'". Appellant Br. at 24 (quoting Nationwide Mut. Ins. Co. v. Aetna Life and Cas. Co., 194 S.E.2d 834, 837 (N.C. 1973)). Consequently, Haney contends an insurer in North Carolina, such as USAA Casualty, may only differentiate the payment of dividends on "the basis of each general kind of insurance" and "by territorial divisions of the location of risks by states." N.C. Gen. Stat. Ann. § 58-8-25(a). We do not address the applicability of this statute, if any, because the record establishes that Haney never made this argument to the district court. It is therefore waived on appeal.[8] United States v. Benton, 523 F.3d 424, 428 (4th Cir. 2008) ("Failure to raise an argument before the district court typically results in the waiver of that argument on appeal."); Holland v. Big River Minerals Corp., 181 F.3d 597, 605 (4th Cir. 1999).

---

[8] While the Defendants did reference N.C. Gen. Stat. § 58-8-25, they did so only once in the course of a discovery dispute over the admission of an affidavit from one of Haney's proposed expert witnesses. That affidavit never mentioned in any way the statutory argument Haney makes here for the first time on appeal. Haney obliquely mentions the statute in his response seeking admission of the affidavit, but he can identify no document in the record, and we find none, where he makes the argument he now makes on appeal.

Therefore, Haney is unable to prove as a matter of law that either USAA or USAA Casualty is contractually obligated to pay him dividends. Accordingly, the district court did not err in its grant of summary judgment in that regard.

## B. Unfair and Deceptive Trade Practices

Haney also asserted in the district court that various actions by the Defendants constituted violations of North Carolina's UDTPA. Specifically, he averred that the following actions constituted violations of the statute: (1) the Defendants' failure to pay auto dividends they were contractually obligated to pay, (2) sending false and misleading communications to North Carolina policyholders regarding the ability to pay the dividend, and (3) sending communications to North Carolina policyholders that constitute per se violations of the UDTPA under N.C. Gen. Stat. § 58-63-15(1). The district court held that Haney's UDTPA claims lacked merit because he had no contractual right to dividends and he failed to present any evidence showing he was injured by the allegedly misleading communications.

As we have already explained, the district court was clearly correct on the first point as Haney had no contractual right to dividends from either USAA or USAA Casualty. As to the second point, to establish a prima facie claim for unfair trade

15

practices, Haney was required to show that: "(1) [the defendants] committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." Dalton v. Camp, 548 S.E.2d 704, 711 (N.C. 2001) (emphasis added). Haney did not produce evidence that any unfair or deceptive trade practice, even if committed by the Defendants, caused him harm.[9] Thus, the district court did not err in granting summary judgment on this claim.

C.    Declaratory Judgment

In addition to the claims addressed above, Haney requested that the district court declare the Defendants: (1) had no authority to withhold dividends from North Carolina policyholders while paying dividends to policyholders in other states, (2) breached contractual and fiduciary duties by refusing to pay dividends, (3) were obligated to pay auto dividends for the years 2002, 2003, and 2004, with interest, and

_____

[9] Specifically, Haney contends that letters from USAA notifying North Carolina policyholders that North Carolina's system for setting automobile insurance rates prevented them from paying an auto dividend in certain years was deceptive and misleading. As the district court noted, even if this were true, Haney suffered no harm because he had no enforceable right to the dividends in the first place.

(4) were prohibited from refusing to pay dividends to North Carolina policyholders in the future.

The district court determined that Haney was not entitled to declaratory judgment because he had no contractual right to dividends from the Defendants. Accordingly, the district court entered summary judgment for the Defendants and denied Haney's request. Our determination that Haney is not contractually entitled to the payment of dividends likewise supports the entry of summary judgment for the Defendants on this issue.

## IV.

For all the foregoing reasons, we affirm the district court's judgment in all respects.

AFFIRMED

17

GREGORY, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority that the "Reciprocal Provisions" section of Haney's policy creates no contractual obligation for USAA Casualty to pay Haney dividends. However, when USAA Casualty chooses to pay a dividend to its policyholders, it is obligated under North Carolina law to ensure that such payments are "fair and equitable" and made according to "reasonable classifications of policies . . . upon the basis of each general kind of insurance covered by those policies and by territorial divisions of the location of risks by states." N.C. Gen. Stat. § 58-8-25(a) (2007). Defendants' decision to exclude only North Carolina policyholders from the payment of dividends was not based on any reasonable classification of this category of policyholders and thus violates North Carolina law and the statutory terms of Haney's policy.

I.

The majority avoids reaching the merits of Haney's argument under North Carolina General Statutes Section 58-8-25 by finding that the argument was waived. According to the majority, "the record establishes that Haney never made this argument to the district court." (Maj. Op. 14.) In fact, Haney did argue the

18

issue before the district court in a memorandum opposing the defendant's motion to strike an affidavit:

> [Under North Carolina General Statute Section 58-8-25 (2007),] the only basis on which an insurance company can differentiate in the payment of dividends to policyholders is on (i) "the basis of each <u>general kind of insurance</u> covered" (i.e., automobile insurance vs. homeowners insurance), and (ii) "by territorial divisions of the location of <u>risks</u> by states . . ." . . . As readily appears from the materials before the Court, Defendants have discriminated against their North Carolina policyholders <u>not</u> on the basis of different kinds of insurance . . . and <u>not</u> on the basis of some "risk" unique to North Carolina . . . but rather on the basis that Defendants disagree with, and do not like, North Carolina's rate setting system.

(Pl.'s Mem. in Opp'n to Defs.' Mot. to Strike Thomas Keller's Aff. 5.)

Of course, on appeal, Haney has restyled this argument as a statutory breach of contract claim. Generally speaking, I am inclined to take the view that we should not allow a party to raise an argument tangentially in the context of a battle over the admissibility of an affidavit and then suddenly transform that argument into the heart of his theory of liability on appeal. But I find this situation unique in two respects. First, our invocation of waiver principles is often motivated by an interest in protecting parties from "unfair surprise." <u>Korangy v. U.S. Food and Drug Admin.</u>, 498 F.3d 272, 276 (4th Cir. 2007) (internal quotation omitted). Here, the Defendants cannot plausibly argue that they were unfairly surprised by

19

Haney's arguments regarding the North Carolina statute since it was the Defendants themselves who made the statute an issue in this case. The first mention of the statute in the record is found in the Defendants' motion to strike the Keller Affidavit where they argue that North Carolina General Statute Section 58-8-25 actually gives them "discretion to pay different dividends to policyholders in different states."[1] (Defs. Mem. in Supp. of Mot. to Strike Aff. of Thomas Keller 8.) I find nothing surprising or unfair in the fact that Haney has now turned the Defendants' own argument against them.

Second, even where an issue has not been raised at the district court level, this Court may nonetheless consider it in "exceptional circumstances." Korangy, 498 F.3d at 276. In this case, we must be mindful of the significant public policy concerns at issue. The state of North Carolina has endeavored to afford insurance policyholders a strong measure of protection in these kinds of cases. North Carolina considers all statutory provisions applicable to insurance policies to be part of a policyholder's policy "to the same extent as if therein written." Nationwide Mut. Ins. Co. v. Aetna Life & Cas. Co.,

---

[1] For most of this appeal, Defendants continued to argue that the statute supports their position, and it was not until oral argument that Defendants decided to take the position that the issue had been waived.

194 S.E.2d 834, 837 (N.C. 1973). Section 58-8-25 concerns the payment of dividends by insurance companies to policyholders, and its language is incorporated by operation of law into all North Carolina insurance policies. Where the state has evinced such an explicit interest in providing contractual protection to its citizens, the justifications for strictly enforcing our non-jurisdictional waiver rules become less compelling. Under these circumstances, and given that Defendants have been on notice of potential contractual liability since the time Haney filed his complaint, I disagree with the majority's conclusion that Haney has waived his statutory breach of contract claim on appeal.

## II.

As Haney notes, an insurance company operating in North Carolina is permitted to discriminate in the payment of dividends, but only by using "reasonable classifications of policies . . . upon the basis of each general kind of insurance covered by those policies and by territorial divisions of the location of risks by states." N.C. Gen. Stat. § 58-8-25(a) (2007). Defendants have argued before this Court that the decision not to pay a dividend to USAA Casualty's North Carolina policyholders was based on a "reasonable classification" of the "'territorial divisions of the location of risks by states.'"

21

(Resp. Br. 33 (quoting N.C. Gen. Stat. § 58-8-25(a) (2007)).) However, the Defendants have been far from clear, both in their briefs and in oral argument, as to how they define the risk attributable to North Carolina policyholders.  On this record, it appears that they have two possible ways for defining the risk, and neither would constitute a "reasonable classification[]" for purposes of discriminating in the payment of dividends.

First, Defendants could -- as they seemed to in oral argument -- define the risk they are insuring in North Carolina as "the cars and the human bodies that travel in them."  The difficulty with this assertion is that Defendants have offered no explanation as to why automobiles and drivers in North Carolina present a greater insurance risk than automobiles and drivers in the other forty-nine states.  Without such explanation, we have no way of discerning whether the decision to exclude North Carolina policyholders from the payment of dividends was in fact reasonable.

Alternatively, Defendants could define the risk as North Carolina's rate-setting system.  As the majority notes, this system "routinely leads to protracted disputes (and often litigation) between insurers such as USAA and the [North Carolina] Insurance Commissioner."  (Maj. Op. 4 n.3.)  The problem for the Defendants here is that North Carolina's rate-

22

setting system cannot properly be classified as a "risk" for insurance purposes. The "risk" covered by an insurance policy is "the category of loss the insurer agreed to provide cover under the terms of the policy." 7 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 101:3 (3d ed. 2005). In the automobile insurance context, this means the risk of harm caused by or to the insured automobile. Thus, to the extent that the Defendants make the unsupported argument that the gamble they take in charging rates higher than those approved by North Carolina's Insurance Commissioner should be classified as a "risk" chargeable to North Carolina policyholders, the argument must fail.[2]

## III.

Because I find that Haney's argument regarding North Carolina General Statutes Section 58-8-25 has not been waived and has merit, I would reverse the district court's entry of

---

[2] North Carolina's rate-setting system guarantees that insurers will receive at least the rate approved by the North Carolina Insurance Commissioner. When insurers charge a higher rate they are taking a risk that, if the Insurance Commissioner prevails in litigation, they will have to return the difference between the charged rate and the approved rate to the policyholders. This "risk," however, has nothing to do with the conduct of policyholders, and it is clearly not the type of risk that the statute contemplates when it talks about "the location of risks by states," N.C. Gen. Stat. § 58-8-25(a) (2007).

23

summary judgment in favor of Defendants on Haney's breach of contract claim.  However, I join the majority in affirming the district court's entry of summary judgment on Haney's UDTPA claim and his request for declaratory relief.