GREGORY, Circuit Judge,
concurring in part and dissenting in part:
I agree with the majority that the “Reciprocal Provisions” section of Haney’s policy creates no contractual obligation for USAA Casualty to pay Haney dividends. However, when USAA Casualty chooses to pay a dividend to its policyholders, it is obligated under North Carolina law to ensure that such payments are “fair and equitable” and made according to “reasonable classifications of policies ... upon the basis of each general kind of insurance covered by those policies and by territorial divisions of the location of risks by states.” N.C. Gen.Stat. § 58-8-25(a) (2007). Defendants’ decision to exclude only North Carolina policyholders from the payment of dividends was not based on any reasonable classification of this category of policyholders and thus violates North Carolina law and the statutory terms of Haney’s policy.
I.
The majority avoids reaching the merits of Haney’s argument under North Carolina General Statutes Section 58-8-25 by finding that the argument was waived. According to the majority, “the record establishes that Haney never made this ar *232 gument to the district court.” (Maj.0p.14.) In fact, Haney did argue the issue before the district court in a memorandum opposing the defendant’s motion to strike an affidavit:
[Under North Carolina General Statute Section 58-8-25 (2007),] the only basis on which an insurance company can differentiate in the payment of dividends to policyholders is on (i) “the basis of each general kind of insurance covered” (i.e., automobile insurance vs. homeowners insurance), and (ii) “by territorial divisions of the location of risks by states ...” ... As readily appears from the materials before the Court, Defendants have discriminated against their North Carolina policyholders not on the basis of different kinds of insurance ... and not on the basis of some “risk” unique to North Carolina- ... but rather on the basis that Defendants disagree with, and do not like, North Carolina’s rate setting system.
(Pl.’s Mem. in Opp’n to Defs.’ Mot. to Strike Thomas Keller’s Aff. 5.)
Of course, on appeal, Haney has restyled this argument as a statutory breach of contract claim. Generally speaking, I am inclined to take the view that we should not allow a party to raise an argument tangentially in the context of a battle over the admissibility of an affidavit and then suddenly transform that argument into the heart of his theory of liability on appeal. But I find this situation unique in two respects. First, our invocation of waiver principles is often motivated by an interest in protecting parties from “unfair surprise.” Korangy v. U.S. Food and Drug Admin., 498 F.3d 272, 276 (4th Cir.2007) (internal quotation omitted). Here, the Defendants cannot plausibly argue that they were unfairly surprised by Haney’s arguments regarding the North Carolina statute since it was the Defendants themselves who made the statute an issue in this case. The first mention of the statute in the record is found in the Defendants’ motion to strike the Keller Affidavit where they argue that North Carolina General Statute Section 58-8-25 actually gives them “discretion to pay different dividends to policyholders in different states.” [1] (Defs. Mem. in Supp. of Mot. to Strike Aff. of Thomas Keller 8.) I find nothing surprising or unfair in the fact that Haney has now turned the Defendants’ own argument against them.
Second, even where an issue has not been raised at the district court level, this Court may nonetheless consider it in “exceptional circumstances.” Korangy, 498 F.3d at 276. In this case, we must be mindful of the significant public policy concerns at issue. The state of North Carolina has endeavored to afford insurance policyholders a strong measure of protection in these kinds of cases. North Carolina considers all statutory provisions applicable to insurance policies to be part of a policyholder’s policy “to the same extent as if therein written.” Nationwide Mut. Ins. Co. v. Aetna Life & Cas. Co., 283 N.C. 87, 194 S.E.2d 834, 837 (1973). Section 58-8-25 concerns the payment of dividends by insurance companies to policyholders, and its language is incorporated by operation of law into all North Carolina insurance policies. Where the state has evinced such an explicit interest in providing contractual protection to its citizens, the justifications for strictly enforcing our non-jurisdictional waiver rules become less compelling. Under these circumstances, and given that Defendants have been on *233 notice of potential contractual liability since the time Haney filed his complaint, I disagree with the majority’s conclusion that Haney has waived his statutory breach of contract claim on appeal.
II.
As Haney notes, an insurance company operating in North Carolina is permitted to discriminate in the payment of dividends, but only by using “reasonable classifications of policies ... upon the basis of each general kind of insurance covered by those policies and by territorial divisions of the location of risks by states.” N.C. Gen. Stat. § 58-8-25(a) (2007). Defendants have argued before this Court that the decision not to pay a dividend to USAA Casualty’s North Carolina policyholders was based on a “reasonable classification” of the “ ‘territorial divisions of the location of risks by states.’ ” (Resp. Br. 33 (quoting N.C. Gen.Stat. § 58-8-25(a) (2007)).) However, the Defendants have been far from clear, both in their briefs and in oral argument, as to how they define the risk attributable to North Carolina policyholders. On this record, it appears that they have two possible ways for defining the risk, and neither would constitute a “reasonable classification[ ]” for purposes of discriminating in the payment of dividends.
First, Defendants could — as they seemed to in oral argument — define the risk they are insuring in North Carolina as “the cars and the human bodies that travel in them.” The difficulty with this assertion is that Defendants have offered no explanation as to why automobiles and drivers in North Carolina present a greater insurance risk than automobiles and drivers in the other forty-nine states. Without such explanation, we have no way of discerning whether the decision to exclude North Carolina policyholders from the payment of dividends was in fact reasonable.
Alternatively, Defendants could define the risk as North Carolina’s rate-setting system. As the majority notes, this system “routinely leads to protracted disputes (and often litigation) between insurers such as USAA and the [North Carolina] Insurance Commissioner.” (Maj. Op. 4 n. 3.) The problem for the Defendants here is that North Carolina’s rate-setting system cannot properly be classified as a “risk” for insurance purposes. The “risk” covered by an insurance policy is “the category of loss the insurer agreed to provide cover under the terms of the policy.” 7 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 101:3 (3d ed.2005). In the automobile insurance context, this means the risk of harm caused by or to the insured automobile. Thus, to the extent that the Defendants make the unsupported argument that the gamble they take in charging rates higher than those approved by North Carolina’s Insurance Commissioner should be classified as a “risk” chargeable to North Carolina policyholders, the argument must fail.[2]
III.
Because I find that Haney’s argument regarding North Carolina General Statutes Section 58-8-25 has not been waived and has merit, I would reverse the district *234 court’s entry of summary judgment in favor of Defendants on Haney’s breach of contract claim. However, I join the majority in affirming the district court’s entry of summary judgment on Haney’s UDTPA claim and his request for declaratory relief.

. For most of this appeal, Defendants continued to argue that the statute supports their position, and it was not until oral argument that Defendants decided to take the position that the issue had been waived.

. North Carolina’s rate-setting system guarantees that insurers will receive at least the rate approved by the North Carolina Insurance Commissioner. When insurers charge a higher rate they are taking a risk that, if the Insurance Commissioner prevails in litigation, they will have to return the difference between the charged rate and the approved rate to the policyholders. This "risk,” however, has nothing to do with the conduct of policyholders, and it is clearly not the type of risk that the statute contemplates when it talks about "the location of risks by states,” N.C. Gen.Stat. § 58-8-25(a) (2007).