[966 NYS2d 16]

In the Matter of ALBERT PRINCE, Appellant, v CITY OF NEW YORK, Respondent.

First Department, May 21, 2013

## APPEARANCES OF COUNSEL

*Steven Banks, Legal Aid Society*, New York City (*Steven B. Wasserman* of counsel), for appellant.

*Michael A. Cardozo, Corporation Counsel*, New York City (*Janet L. Zaleon, Kristin M. Helmers* and *Ilyse Sisolak* of counsel), for respondent.

## OPINION OF THE COURT

RICHTER, J.

■ On February 23, 2011, petitioner Albert Prince removed a single television antenna from the top of some curbside garbage bags, placed it in his vehicle, and drove away. Shortly thereafter, the New York City sanitation police pulled Prince over, and issued him a summons for unauthorized removal of residential recyclable material using a motor vehicle (*see* Administrative Code of City of NY § 16-118 [7] [b] [1]). The summons carried with it a mandatory $2,000 fine for a first offense (*see* Administrative Code § 16-118 [7] [f] [1] [i]). The police also impounded Prince's vehicle, which was not to be released until the fine and applicable storage fees were paid (*see* Administrative Code § 16-118 [7] [g] [1]). In this appeal, Prince challenges the penalty as an excessive fine in violation of the state and federal constitutions. We agree and conclude that, under the specific facts of this case, the fine imposed is grossly disproportional to the gravity of the offense and must be vacated.

On the morning in question, a sanitation police lieutenant was patrolling in Brooklyn looking for individuals removing metal from recyclable trash placed out by homeowners. The lieutenant observed Prince take a television antenna made of recyclable metal, place it in his van, and drive away. Prince took the discarded antenna from the curb in front of a one- or two-family house, where it was resting on top of black garbage bags. Prince is a carpenter and sculptor who belongs to a group of artists who use recyclable construction material for art installations at the Brooklyn Art Exchange. Prince believed that the antenna was garbage and intended to use it in his artwork.

After Prince drove away, the lieutenant activated the lights and siren on his vehicle and pulled Prince's van over. He issued Prince a $2,000 notice of violation for "remov[ing] recyclable metal . . . from residential premise[s]" and placing it into his van, in violation of section 16-118 (7) (f) (1) (i) of the Administrative Code. The lieutenant also instructed Prince to relinquish the keys to the van, and impounded the vehicle pending payment of the $2,000 fine. Prince was unable to continue working because he needed the van for his carpentry job. On March 23, 2011, a month after the incident and while the vehicle was still under impoundment, a hearing was held before an Administrative Law Judge of the Office of Administrative Trials and Hearings. After taking testimony from the lieutenant and Prince, the Judge sustained the violation, finding that Prince "removed [a]

metal antenna from [the] location and placed it in his vehicle, intending to use it for his artwork."[1] The Judge found both the lieutenant and Prince credible, but concluded that Prince's testimony did not establish any valid defense to the charge. Concluding that she had no discretion to reduce the penalty, the Judge imposed the mandatory $2,000 fine.

Prince appealed the decision to the New York City Environmental Control Board (ECB) contending, inter alia, that the mandatory $2,000 penalty enforced by vehicle impoundment was an unconstitutionally excessive fine.[2] By decision dated October 27, 2011, the ECB upheld the notice of violation and the $2,000 fine, concluding that it lacked the authority to rule on the constitutional issue. Prince then commenced the instant CPLR article 78 proceeding against respondent City of New York contending that the fine was unconstitutionally excessive, and that his due process rights were violated because he did not receive a prompt hearing. The petition sought vacatur of the $2,000 fine and return of the $500 storage fee. In a judgment entered March 9, 2012, Supreme Court denied the petition and dismissed the proceeding, finding no constitutional violations (2012 NY Slip Op 30518[U] [2012]). Prince now appeals.[3]

Section 16-118 (7) (b) (1) of the Administrative Code provides that, except for authorized employees of the Department of Sanitation, "it shall be unlawful for any person to disturb, remove or transport by motor vehicle any amount of recyclable materials that have been placed by owners . . . of residential premises . . . adjacent to the curb line . . . for collection or removal by the [sanitation] department unless requested by the owner." Section 16-118 (7) (f) (1) (i) provides that anyone who violates this provision using a motor vehicle shall be assessed a $2,000 fine for the first offense. The statute does not allow for the discretionary imposition of any lesser penalty. In addition, any motor vehicle used to commit the violation must be impounded by the sanitation department and not be released

---

1. Although the hearing record reflects that Prince may also have taken "some cans" from the garbage, the Judge's finding was that he removed only the metal antenna.

2. On June 24, 2011, four months after being impounded, and while the administrative appeal was pending, the Department of Sanitation agreed to release Prince's vehicle upon payment of $500 in storage fees.

3. ECB had previously found that Prince did not have to prepay the fine during pendency of the administrative appeal due to financial hardship. The City has agreed not to pursue collection of the $2,000 fine pending the determination of the appeal before this Court.

until the fine, along with storage fees, has been paid, or a bond posted (Administrative Code § 16-118 [7] [g] [1]).

The New York City Council enacted these provisions to provide harsher penalties for those who use motor vehicles to remove recyclable materials from the curbside. Previously, the maximum fine for violators was $100. The legislative history of the current law indicates that the City Council did not believe the $100 fine was a sufficient deterrent to those individuals who appropriate recyclables and sell them for financial gain (*see* Rep of Comm on Sanitation and Solid Waste Management, 2007 NY City Legis Ann at 318). The Council was concerned that trucks with out-of-state license plates were taking recyclables from curbsides the evening before the regular sanitation department pickup, thereby depriving the City of recycling revenue (*id.*).

Thus, the Council's intent in passing the statute was to prevent people from making "a quick profit [from] tak[ing] recyclable materials in large quantities" (*id.* at 320; *see also* Testimony of Todd Kuznitz, Sanitation Director of Enforcement, Hearing of Comm on Sanitation and Solid Waste Management, Int. No. 582-A, Sept. 25, 2007 at 12 [legislation aimed at those removing recyclables "for commercial purposes, for serious business reasons, and in great bulk"]; Statement in Support of Legislation Increasing Fines and Penalties for Rustlers of Recyclables, Natural Resources Defense Council, Inc., Hearing of Comm on Sanitation and Solid Waste Management, Int. No. 582-A, June 13, 2007 ["legislation is targeted at commercial enterprises that are stealing recyclables on a high-volume basis and in a business context"]). Indeed, at the City Council hearing on the proposed law, several Council members expressed concerns about the potential sweep of the proposed $2,000 fine, suggesting that such a penalty would be excessive if imposed on individuals taking items for personal use (Hearing of Comm on Sanitation and Solid Waste Management, Int. No. 582-A, Sept. 25, 2007 at 10-12). Despite these reservations, and the stated intent of the legislation, the statute, as enacted, applies broadly to individuals who take "any amount" of recyclable materials, no matter how small (Administrative Code § 16-118 [7] [b] [1]).

It is undisputed that Prince violated the relevant Administrative Code provision—he removed and transported a recyclable object using a motor vehicle. Nevertheless, under the specific circumstances here, we conclude that the mandatory $2,000 penalty amounts to an unconstitutionally excessive fine. The Eighth Amendment of the United States Constitution forbids

the imposition of "excessive fines." The New York State Constitution contains the same prohibition (art I, § 5). The Excessive Fines Clause " 'limits the government's power to extract payments, whether in cash or in kind, as *punishment* for some offense" ' " (*County of Nassau v Canavan*, 1 NY3d 134, 139 [2003], quoting *Austin v United States*, 509 US 602, 609-610 [1993]). A fine is unconstitutionally excessive if it "notably exceeds in amount that which is reasonable, usual, proper or just" (*People v Saffore*, 18 NY2d 101, 104 [1966]). Thus, the Excessive Fines Clause is violated where the fine is "grossly disproportional to the gravity of [the] offense" (*United States v Bajakajian*, 524 US 321, 334 [1998]; *see Canavan*, 1 NY3d at 140).

■ We reject the City's contention that the Excessive Fines Clause does not apply to the civil penalty at issue here. The City points out that *Bajakajian* dealt with criminal forfeiture of property involved in the offense of failing to report more than $10,000 in currency when leaving the country. The City also notes that, although *Austin* and *Canavan* are civil cases, they involved forfeiture of property as the instrumentality of a crime. Thus, the City argues that because no criminal conduct took place here, the administrative penalty assessed is not subject to excessive fines jurisprudence.

The City too narrowly views the scope of the Excessive Fines Clause. Although Eighth Amendment claims often arise in the criminal context, civil fines may also fall within reach of the amendment (*see Korangy v United States F.D.A.*, 498 F3d 272, 277 [4th Cir 2007], *cert denied* 552 US 1143 [2008]; *Towers v City of Chicago*, 173 F3d 619, 623-624 [7th Cir 1999], *cert denied* 528 US 874 [1999]). This Court recognized as much in *Matter of Street Vendor Project v City of New York* (43 AD3d 345 [1st Dept 2007], *lv denied* 10 NY3d 709 [2008]). In that case, a group representing street vendors challenged as unconstitutional a schedule of civil fines adopted by the ECB. Although we found that the record was insufficient to permit review of the group's constitutional claim, we concluded that individual street vendors could raise such a challenge in future lawsuits where the facts of each separate case could be developed (*id.* at 346).

The relevant inquiry is not whether the fine arises in the civil or criminal context, but whether the fine constitutes punishment (*see Austin*, 509 US at 610 ["The notion of punishment, as we commonly understand it, cuts across the division between the civil and the criminal law"] [internal quotation marks omit-

ted]). Civil penalties serving solely remedial purposes do not fall under the rubric of the Eighth Amendment (*Austin*, 509 US at 621-622). But where a civil fine "serves, at least in part, deterrent and retributive purposes," it is considered punitive and subject to the Excessive Fines Clause (*Canavan*, 1 NY3d at 139-140; *see Austin*, 509 US at 621 [sanction that serves deterrent purpose is punishment]; *Bajakajian*, 524 US at 329 [deterrence has traditionally been viewed as a goal of punishment]).

The statute's requirement of a mandatory $2,000 fine cannot fairly be viewed as solely remedial. This sizeable sanction is assessed regardless of the amount, or value, of the recyclable materials taken, and bears no relationship to the actual loss sustained by the City as a result of the violation (*see Bajakajian*, 524 US at 329 [forfeiture did not serve the remedial purpose of compensating the government for a loss]; *Towers v City of Chicago*, 173 F3d at 624 [civil fines at issue serve little or no remedial purpose because they do not compensate the City for any loss sustained as a result of the violations]). Particularly where the value of the item taken is minimal, the $2,000 fine undeniably has a punitive element.

The legislative history of the statute makes clear that the $2,000 fine was established to serve as a deterrent. The September 25, 2007 Report of the City Council's Committee on Sanitation and Solid Waste Management (the Committee) explained that the fine was being increased to $2,000 because the previous fine of $100 "does not seem to have deterred the efforts of those wishing to take [recyclable materials] for their own financial gain" (2007 NY City Legis Ann at 318). In written testimony submitted to the Committee, John Doherty, Commissioner of the Department of Sanitation, stated that "increasing the fines for this violation will deter individuals from interfering with the Department's recycling collection operations" (Testimony of John J. Doherty, Sanitation Commissioner, Hearing of Comm on Sanitation and Solid Waste Management, Int. No. 582-A, Sept. 25, 2007 at 2). Indeed, the City's brief on appeal repeatedly points out that the increased penalties were enacted to deter violators. Because the fine here, at least in part, serves a deterrent purpose, it cannot be considered solely remedial and thus is subject to Eighth Amendment analysis (*see State of New York v Town of Wallkill*, 170 AD2d 8, 11 [3d Dept 1991] [civil penalty contained in Environmental Conservation Law is punitive in nature, serving purposes of both retribution and deterrence, in addition to restitution]; *United States v*

*Mackby*, 261 F3d 821, 830 [9th Cir 2001] [civil sanctions under the False Claims Act are subject to the Excessive Fines Clause because the sanctions represent a payment to the government, at least in part, as punishment]).[4]

This Court's decision in *OTR Media Group, Inc. v City of New York* (83 AD3d 451 [1st Dept 2011]) involves a different type of statutory scheme. In *OTR*, the plaintiff challenged the fine schedule for violating regulations restricting outdoor advertising signs situated within view of arterial highways and public parks. In rejecting the constitutional excessive fine claim, we found that the sanctions there served only a remedial purpose. The regulations at issue in *OTR* did not entirely bar outdoor advertising, but simply required that when signs were erected, they complied with zoning regulations. Here, in contrast, the Administrative Code provision constitutes a complete bar to removing recyclable materials, making the fines punitive, not remedial.

 Having concluded that the sanction here falls within reach of the Excessive Fines Clause, we now turn to whether it is "grossly disproportional" to the gravity of Prince's offense (*Bajakajian*, 524 US at 334). "The touchstone of [this] constitutional inquiry . . . is the principle of proportionality: The amount of the [fine] must bear some relationship to the gravity of the offense that it is designed to punish" (*id.*). In determining gross disproportionality, a court should consider the seriousness of the offense, the severity of the harm caused and the potential harm had the defendant not been apprehended, the maximum fine to which the defendant could have been subject, and the defendant's economic circumstances (*Canavan*, 1 NY3d at 140).

Applying these factors, we find that the imposition of a $2,000 fine for removal of a discarded television antenna from the garbage is grossly disproportional to the offense charged. The seriousness of the offense is relatively minor, as it involves taking a single piece of metal, abandoned by its owner, which likely had little value to the City.[5] There was no significant harm caused by Prince's conduct, and certainly no potential harm to

---

4. There is no merit to the City's argument that the Eighth Amendment is not applicable because Prince had the ability to avoid the fine by not taking the antenna. Under that rationale, no penalty could ever be subject to the Excessive Fines Clause because any potential violator could always avoid a fine by not committing the charged conduct in the first place.

5. The record contains no evidence of the antenna's actual recycling value.

the owner of the antenna, or anyone else in the area, had Prince not been caught. Moreover, because the statute contains no discretion and mandates a $2,000 fine in all circumstances, Prince was essentially subject to the maximum punishment for the offense, even though he took a minimal amount of material. The City cannot persuasively argue that a penalty in an amount less than $2,000 would not be an adequate deterrent to a first-time offender like Prince, who is neither a commercial dealer nor someone taking items in bulk. Finally, the record established that, as an artist and carpenter, Prince had limited financial resources, as evidenced by the financial hardship waiver granted by ECB.

To the extent Prince contends that the impoundment of his van also constitutes an excessive fine, that issue is moot. Although the protracted loss of a vehicle for someone who, like Prince, is unable to pay the fine could raise excessive fine implications, we need not reach that issue because the vehicle has been returned to him. We reject Prince's due process claim seeking return of the $500 storage fee paid to release his vehicle. Prince had the right to request an earlier hearing (see 48 RCNY 3-51 [b]), and when he did request an expedited hearing, he received one.

Accordingly, the judgment of the Supreme Court, New York County (Cynthia Kern, J.), entered March 9, 2012, denying the petition to annul the New York City Environmental Control Board's decision, dated October 27, 2011, should be modified, on the law, to grant the petition to the extent of vacating the $2,000 fine, and otherwise affirmed, without costs.

GONZALEZ, P.J., TOM and SWEENY, JJ., concur.

Judgment, Supreme Court, New York County, entered March 9, 2012, modified, on the law, to grant the petition to the extent of vacating the $2,000 fine, and otherwise affirmed, without costs.