City of New York v Jones (2025 NY Slip Op 04842)

City of New York v Jones

2025 NY Slip Op 04842

Decided on September 04, 2025

Appellate Division, First Department

Gesmer, J. 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: September 04, 2025
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Cynthia S. Kern
Peter H. Moulton Barbara R. Kapnick Ellen Gesmer Bahaati E. Pitt-Burke

Index No. 450209/21|Appeal No. 3706|Case No. 2023-02410|

[*1]The City of New York, Plaintiff-Appellant,
v
Thomas Stevenson Jones et al., Defendants-Respondents, Jane Doe(s) 1-5, et al., Defendants.

Plaintiff appeals from an order of the Supreme Court, New York County (Nicholas W. Moyne, J.), entered April 12, 2023, which denied its motion for summary judgment and set the matter down for a hearing.

Muriel Goode-Trufant, Corporation Counsel, New York (Tahirih M. Sadrieh and Jamison Davies of counsel), for appellant.

Gesmer, J. 

In late 2020, a New York City Department of Health inspector issued summonses to defendant Thomas Stevenson Jones for food vending without a license from his truck, selling food from an unapproved or unknown source, and not having food service operations separated from living or sleeping quarters in the vehicle. At a subsequent hearing before the Office of Administrative Trials and Hearings (OATH), Jones admitted to these violations and OATH imposed fines on him totaling $2,600.
The City then commenced this proceeding in Supreme Court pursuant to Administrative Code of City of NY §§ 17-321(c) and 17-322 to seize and order forfeiture of Jones' truck. Administrative Code § 17—321(a) permits both public health officials and the police to enforce food vending codes. Section 17-321(c)(iii) permits police or public health officials to seize a food vending vehicle being used by an unlicensed vendor and any food being offered for sale. If forfeiture proceedings are not commenced, the vendor may be charged with the "reasonable costs for removal and storage payable prior to the release of such food, vehicle or pushcart." Section 17—322(a) provides for forfeiture of "all property seized" from unlicensed food vendors "[i]n addition to any penalties imposed" pursuant to Section 17-325. Section 17-325(a) provides that vending food without a license is a misdemeanor punishable by a fine of up to $1,000, imprisonment for up to three months, or both. Section 17-325(c) provides for additional fines for unlicensed food vendors.
The motion court denied the City's motion for summary judgment on the grounds that there are questions of fact as to: (1) whether the forfeiture provision at issue is punitive in nature; and (2) whether the value of the property seized is so disproportional to the fines imposed and any harm to society that it violates the excessive fines clauses of the New York and United States Constitutions.[FN1] We now affirm.
This case is controlled by the decision of the Supreme Court in Timbs v Indiana (586 US 146 [2019]) which held that the Federal excessive fines clause applies to the states, and the Court of Appeals' decision in County of Nassau v Canavan (1 NY3d 134 [2003]), which held that both the Federal and State excessive fines clauses apply to civil in rem forfeitures. Both Timbs and Canavan held that civil in rem forfeitures are subject to the protection of the excessive fines clause when they are at least partly punitive (Timbs, 586 USat 151 [excessive fines clause "limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense" (internal quotation marks omitted)]; see also Canavan, 1 NY3d at 139). When forfeiture "serves, at least in part, deterrent and retributive purposes," it is punitive (Canavan, 1 NY3d at 139-140).
"[F]orfeiture generally and statutory in rem forfeiture in particular historically have been understood, at least in part, as punishment" (Austin v United States, 509 US 602, 618 [1993]). That determination can be based on the presence of many factors, some of which are present here. In particular, courts have found forfeiture to be at least partially punitive where it is tied directly to commission of a criminal offense; where possession of the forfeited property itself is not a crime, so that removing it from the owner's possession serves no remedial public health or safety purpose; where there are dramatic variations in the value of forfeitable property; where the value of the forfeited property does not correlate with any harm caused to society or the cost of enforcement; and where forfeiture has been characterized as a deterrent (see Austin, 509 US at 620-621; see also Prince v City of New York, 108 AD3d 114, 120 [1st Dept 2013] [civil penalty that bore no relationship to the loss sustained by the City, and was referred to as a "deterrent" in legislative history was punitive]). In addition, this Court has held that where, as here, the activity subject to civil sanction is completely barred, the sanction is punitive (see Prince, 108 AD3d at 121). The City correctly points out that the inclusion of an innocent owner exception, which the statutes at issue here lack, can be an indicator of punitive forfeiture (see Austin, 509 US at 619). However, its absence is not fatal to a determination that the forfeiture here is at least partially punitive (see id. at 610).
The forfeiture provisions at issue here are tied to the commission of a misdemeanor and enforceable by police (Administrative Code § 17-325[a]). Indeed, the plain language of Section 17-322(a) indicates that forfeiture is a punishment for unlicensed food vendors "in addition to" the other penalties listed in section 17-325 (see Austin, 509 US at 620-621).
However, possession of the forfeited property here is not itself a crime. Accordingly, removing it from the owner's possession serves no apparent remedial purpose with regard to public health or safety (id. at 621 ["there is nothing even remotely criminal in possessing an automobile" (internal quotation marks omitted)]).
Jones' claim that the forfeited vehicle is worth $40,000 demonstrates that the statute at issue here provides for forfeiture of property that may have "dramatic variations in the value," calling into question whether its forfeiture serves a purely remedial purpose or is at least partly punitive (id. at 621). Moreover, since the statute already provides that the City may charge the unlicensed food vendor whose property has been seized "reasonable costs for removal and storage payable prior to the release of such food, vehicle or pushcart" (Administrative Code § 17-321[c][iii]), forfeiture of the vehicle appears to have little, if any, correlation to the cost of enforcement (see Austin, 509 US at 621; Canavan, 108 AD3d at 120).
Finally, there is some indication in the statutory history of the forfeiture provision of the food vending laws that it was, at least in part, intended to serve the traditionally punitive goal of deterrence (see Austin, 509 US at 620-621; Prince, 108 AD3d at 120-121). The relevant sections of the food vending laws were enacted in 1977 (Formerly § D22-16.0, Local Law 77/1977 § 2) to address complaints from City officials, private business owners, and the public that street vendors operated without a license, which caused them not to be subject to taxation by the City, and clogged the sidewalks. The legislation provided for regulation of food vendors by the Department of Public Health for the first time "with emphasis on inspections and safety of the food, cart, stand or vehicle, and its placement" (Proceedings of Council of City of N.Y., July 7 to December 29, 1977, Vol. II at 1453-1454). It strengthened enforcement by increasing fines for violations and by directing, for the first time, forfeiture of vehicles, carts, and goods upon a determination of unlicensed vending (Administrative Code § 17—322(a) [Formerly § D22-17.0, Local Law 77/1977 § 2]). On September 22, 1976, Mayor Beame's administration and the City Council issued a joint press release supporting the legislation "aimed at driving an estimated 10,000 illegitimate peddlers from the city's streets" through "severe penalties, including . . . fines, forfeiture of goods and even prison terms for unlicensed peddlers" (NYLS Local Law No. 77 [1977] of City of New York at 26). At the public hearing on the bill, Sidney Baumgarten, who was then the special assistant to Mayor Beame and head of the Mid-town Taskforce, stated that seizure of merchandise, increased fines and jail terms for unlicensed vendors were important "deterrent[s]" (id., vol 3 at 21 ["Police Challenged on Peddler's Law," New York Times, October 7, 1976, page 51]). Community Board 10 held its own hearing and then issued a resolution recommending that the forfeiture provision be replaced with a provision providing for the return of property to the vendor upon presentation of a license because the legislation already provides for fines and imprisonment and "there is no need for double punishment" (id. at 140). The Statement on Behalf of the Frankfurter Vending Industry on the proposed bill stated that the forfeiture provisions "are harsh, unduly punitive, and unnecessary for any legitimate purpose," such as "preserving public health," and it is "clear . . . that any seizure or forfeiture is unrelated to evidentiary or other prosecutorial needs and is merely an excuse for imposing a more severe penalty upon the vendor" (id. at 93, 98-99, 109). Thus, the legislative history of the food vending forfeiture statute indicates that it was intended to completely prohibit unlicensed food vendors through the imposition of forfeiture as a deterrent, making clear that the forfeiture provision was at least partly punitive (see Austin, 509 US at 620; Prince, 108 AD3d at 121).
Here, as the motion court found, Jones raised questions of fact as to whether the forfeiture of his truck "is, at least in part, punitive and meant as a deterrence, rather than simply remedial." The City states that the forfeiture provision at issue is "designed to protect public health, safety, and welfare by ensuring compliance." However, a penalty that ensures compliance through forfeiture, in the absence of any threat to public health, safety or welfare, suggests that it serves the goal of deterrence, which "has traditionally been viewed as a goal of punishment" (United States v Bajakajian, 524 US 321, 329 [1998]). Here, the motion court found that the Health Department never sought to test any of the items being sold to determine if their contents posed a danger to the public, there was no evidence the Health Department ever received any complaints about Jones selling spoiled or tainted food, there was no evidence that the Health Department had decided that public safety required forfeiture of the vehicle, and there was no evidence that there were any "victims" of the sale of items from the vehicle or that the proceeds of the forfeiture would be distributed to them. Accordingly, the City failed to establish, as a matter of law, that forfeiture under Administrative Code §§ 17-321(a), (c)(iii), and 17-322(a) was purely remedial. In any event, Jones raised issues of fact as to whether the forfeiture was, at least in part, punitive, and thus subject to the excessive fines clauses of the New York and US Constitutions.
A "punitive forfeiture violates the Excessive Fines clause if it is grossly disproportional to the gravity of a defendant's offense" (Bajakajian, 524 US at 334; see also Canavan, 1 NY3d at 140). In determining gross disproportionality, the Court of Appeals has held that courts should consider "such factors as the seriousness of the offense, the severity of the harm caused and of the potential harm had the defendant not been caught, the relative value of the forfeited property and the maximum punishment to which defendant could have been subject for the crimes charged, and the economic circumstances of the defendant" (Canavan, 1 NY3d at 140; see also Property Clerk, NY City Police Dept v Nurse, 185 AD3d 459, 460-461 [2020]).
Here, Jones asserts that the vehicle is worth approximately $40,000. In contrast, the fines total just $2,600. Jones further asserted in his affidavit that the City's possession of his vehicle had caused him "extreme financial hardship" and prevented him from operating his business lawfully in places outside of New York City that do not require a food vending license. There is no evidence that the sale of the items at issue did cause or could have caused any harm. Therefore, Jones also raised issues of fact as to whether imposing a forfeiture on his property, which had a value far in excess of both the fines imposed and any damage to society, violated the excessive fines clauses of the New York State and US Constitutions.
The City relies on this Court's one-paragraph order in City of New York v Nadler (304 AD2d 491 [1st Dept 2003]). However, that case, decided seven months before Canavan and 16 years before Timbs, does not address at all whether forfeiture of a food vendor's vehicle for violation of local vending codes violates the excessive fines clause of the New York or US Constitutions. Thus, Nadler does not prevent us from considering these constitutional issues under now prevailing excessive fines clause jurisprudence.
In Nadler, the motion court denied the City's motion for summary judgment seeking forfeiture of a licensed food vendor's cart based on a violation of the Administrative Code's provision requiring that the person selling food from the cart be a licensed food vendor. The motion court granted the vendor's motion for summary judgment in his favor, denying forfeiture and directing return of his cart. This Court reversed, granted the City's motion for summary judgment, and held that "mandatory and unqualified" language in the Administrative Code provisions leaves courts with "no discretionary authority" to direct return of the cart (Nadler, 304 AD2d at 491). In making this finding, this Court quoted Property Clerk of New York City Police Dept v Ferris (77 NY2d 428, 431 [1991]) as to the mandatory nature of the statutory language. In Ferris, the vendor did not claim that the forfeiture violated the excessive fines clause.
The only other case this Court cited in Nadler is Henry v Alquist (127 AD2d 60, 64 [2d Dept 1987]). In Alquist, the court held that the statutory language at issue was mandatory, as this court did in Nadler. The Alquist trial court found that civil forfeiture under the New York State Public Health Law of Ms. Alquist's car used in the sale of a controlled substance that resulted in her criminal conviction was "excessive." On appeal, without discussing any cases interpreting the state or federal excessive fines clauses, the Second Department reversed based on the mandatory language in the civil forfeiture statute at issue.[FN2] The Second Department further stated, "[t]o the extent that the trial court's determination may be interpreted as a holding that the forfeiture sanction in this case would violate the State and Federal constitutional proscriptions against cruel and unusual punishment . . . we find it to be in error," noting that the civil forfeiture was "separate from any criminal penalties that may be imposed upon any of the individuals involved in the drug transactions" (Alquist, 127 AD2d at 65). The Second Department further stated, "[t]his . . . is not to say that under no circumstances may a court deem the forfeiture statute unconstitutional as applied in a particular case" (id.).
Like Nadler, Alquist was decided before the Court of Appeals' decision in Canavan, which held that a civil in rem forfeiture is subject to the New York and federal excessive fines clauses where it is at least partly punitive (see Canavan, 1 NY3d at 140). Canavan relied heavily on the U.S. Supreme Court's opinion in Austin, which held that "civil proceedings may advance punitive as well as remedial goals" (Austin, 509 US at 610), and that the civil classification of a forfeiture is irrelevant in determining whether it violates the federal excessive fines clause (id. ["the question is not . . . whether forfeiture . . . is civil or criminal, but rather whether it is punishment"]). Moreover, Alquist was decided before the U.S. Supreme Court opinions that today establish that the federal excessive fines clause is applicable to the states (Timbs, 586 US 146) and that forfeitures, whether brought against an individual criminally (see Bajakajian, 524 US 321) or in a civil in rem proceeding (see Timbs, 586 US 146; Austin, 509 US 602) as in Alquist, fall within the protection of the New York State and federal excessive fines clause when they are at least partially punitive (see Timbs, 586 US at 154; Bajakajian, 524 US at 321; Austin, 509 US at 619; Canavan, 1 NY3d at 139).
Accordingly, this Court's opinion in Nadler does not prevent us from addressing the constitutional issue of whether the civil forfeiture at issue here is subject to and violates the excessive fines clauses of the US and New York Constitutions in light of subsequent U.S. Supreme Court and Court of Appeals jurisprudence.
Jones' opposition to the City's motion raised material issues of fact requiring further proceedings, including the ordered hearing, in order to determine whether the civil forfeiture here is subject to the excessive fines clause of the US and New York Constitutions because it is not entirely remedial in nature, and serves, at least in part, deterrent and/or retributive purposes (see Canavan, 1 NY3d at 139-140), and whether, if the excessive fines analysis does apply, the forfeiture would be grossly disproportionate to the offense (see Property Clerk, N.Y. City Police Dept. v Nurse, 185 AD3d 459, 460-461 [1st Dept 2020]).
Accordingly, the order of Supreme Court, New York County (Nicholas W. Moyne, J.), entered April 12, 2023, which denied plaintiff City of New York's motion for summary judgment and set the matter down for a hearing, should be affirmed, without costs.
Order, Supreme Court, New York County (Nicholas W. Moyne, J.), entered April 12, 2023, affirmed, without costs.
Opinion by Gesmer, J. All concur.
Kern, J.P., Moulton, Kapnick, Gesmer, Pitt-Burke, JJ.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: September 4, 2025

Footnotes

Footnote 1: The US Constitution provides: "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted" (US Const 8th Amend [emphasis added]). The New York Constitution contains identical language (NY Const, art I, § 5).

Footnote 2: The only case dealing with any constitutional issue cited by the Second Department in Alquist was Calero-Toledo v Pearson Yacht Leasing Co. (416 US 663 [1974]). That case involved forfeiture of a yacht used unlawfully without the owner's knowledge in connection with criminal activity. However, Calero-Toledo did not address whether the forfeiture violated the excessive fines clause. Rather, it explored whether the forfeiture violated the innocent owner's due process rights under the fifth and fourteenth amendments to the US Constitution.